ORIGINAL    E-filing

FILED

UNITED STATES DISTRICT COURT

MAY 2 8 2008

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

--oOo--

CV 08 2694

PJH

VICTOR RAY CRAWFORD,

No. _____

    Petitioner,

v.

MICHAEL S. EVANS, Warden,
Salinas Valley State Prison,

    Respondent.

_____/

# PETITION FOR WRIT OF HABEAS CORPUS

## AND

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

David McNeil Morse, #66923
Attorney at Law
595 Market Street
Suite 1350
San Francisco, CA 94105
(415) 974-1175

Attorney for Petitioner

1

TABLE OF CONTENTS

2  TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

3  PETITION FOR WRIT OF HABEAS CORPUS . . . . . . . . . . . . . . . . . . . .   1

4  FACTS ESTABLISHING THAT PETITIONER WAS DENIED HIS
       RIGHTS TO DUE PROCESS, AND FAIR TRIAL WHEN THE
5      TRIAL COURT ALLOWED HIS CONVICTION FOR
       KIDNAPPING FOR ROBBERY BASED UPON INSUFFICIENT
6      EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

7  VERIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

8  MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . .   7

9  STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

10  STATEMENT OF TRIAL EVIDENCE CONCERNING THE OFFENSE . . . . .   8

11  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

12      THE STATE COURT VIOLATED PETITIONER'S FEDERAL
        CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FAIR
13      TRIAL BY AFFIRMING HIS CONVICTION FOR
        KIDNAPPING FOR ROBBERY DESPITE THE FACT THAT
14      THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE
        CHARGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

15
        A.   Petitioner's contention in the state court proceeding . . . . . . .   12
16
             1.   The evidence was insufficient to establishthat the
17                movement of Alex V. was for the purpose of
                  robbery or attempted robbery . . . . . . . . . . . . . . .   12
18
             2.   There was insufficient evidence that petitioner had a
19                specific intent to rob at the time of the kidnapping  . . .   14

20      B.   The state court's adjudication of petitioner's case was
             contrary to, or involved unreasonable application of, clearly
21           established federal law, as determined by the Supreme
             Court of the United States . . . . . . . . . . . . . . . . . . . . .   15
22
    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17
23

24

25

26

1                          **TABLE OF AUTHORITIES**

2    **Cases**

3    Jackson v. Virginia, 443 U.S. 307, 313-324 (1979) . . . . . . . . . . . . . . . . . .    12

4    Lockyer v. Andrade, 538 U.S. 63, 71 (2003) . . . . . . . . . . . . . . . . . . . . . . .    15

5    People v. Jones, 75 Cal.App.4th 616, 627 (1999) . . . . . . . . . . . . . . . . . . . .    14

6    People v. Lindsay, 227 Cal.App.2d 482, 508-510 (1964) . . . . . . . . . . . . . . .    14

7    People v. Tribble, 4 Cal.3d 826, 832 (1971) . . . . . . . . . . . . . . . . . . . . . . .    14

8    Smith v. Mitchell, 437 F.3d 884, 889-890 (9th Cir.2006),
     judg. vacated sub nom Patrick v. Smith,      U.S.      [127 S.Ct. 2126] (2007),
9    judg. reinstated sub nom Smith v. Patrick, 508 F.3d 1256 (9th Cir.2007) . . . . .    15

10
     **Statutes**
11
     28 U.S.C. section 2254(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1
12
     28 U.S.C. § 2254(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15
13
14

15

16

17

18

19

20

21

22

23

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

--o0o--

No. _____

VICTOR RAY CRAWFORD,

    Petitioner,

    v.

MICHAEL S. EVANS, Warden,
Salinas Valley State Prison,

    Respondent.

_____/

## **PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner VICTOR CRAWFORD, by and through his counsel, respectfully petitions this court for a writ of habeas corpus, and by this verified petition sets forth the following facts and causes for the issuance of said writ:

I.

Petitioner is unlawfully incarcerated and restrained of his liberty in violation of his fundamental rights under the Constitution and laws of the United States of America at Soledad, California, by James Tilton, Secretary of the California Department of Corrections and Rehabilitation, and Michael S. Evans, Warden of Salinas Valley State Prison.  Petitioner is therefore in custody within the meaning of 28 U.S.C. section 2254(a).

II.

Petitioner is being held pursuant to a judgment pronounced by the San Francisco County Superior Court, the Honorable S. Lee Vavuris, issued on February 25, 1982 in Action No. 102016, which requires petitioner to serve a sentence of life plus 16 years for kidnapping for robbery, attempted robbery, lewd acts with a child under 14, oral

- 1 -

1    copulation, sodomy, and aggravated assault. Petitioner is not serving any other sentence,

2    and has no future sentences to serve after completion of the sentence imposed by the

3    above judgment.

### III.

5       Petitioner at all times pleaded not guilty, and stood jury trial. Petitioner testified

6    at trial. His conviction was affirmed by the California Court of Appeal, First Appellate

7    District, Division Two, on direct appeal in Case No. A111460 in an unpublished opinion

8    issued on December 19, 2006. (See Slip Opinion of the Court of Appeal in Case No.

9    A111460, a true copy of which is attached hereto and incorporated herein by reference

10    as Exhibit A to this petition.) Petitioner's petition for review in the California Supreme

11    Court (Case No. S149632) was denied on February 28, 2007.

### IV.

13       Throughout the superior court proceedings, petitioner was represented by William

14    Maas, whose address is 555 Seventh Street, San Francisco, CA 94103. In his direct

15    appeal, petitioner was represented by J. Frank McCabe, whose address is 500 Sansome

16    Street, Suite 212, San Francisco, CA 94111.

### V.

18       Petitioner's sentence has been unlawfully and unconstitutionally imposed in

19    violation of his federal constitutional rights as guaranteed by the Fifth, Sixth and

20    Fourteenth Amendments to the United States Constitution because, in violation of

21    petitioner's above-listed federal constitutional rights to due process and fair trial, he was

22    convicted of kidnap for robbery based upon insufficient evidence.

1

VI.

2        Petitioner alleges that the adjudication of this claim in state court resulted in a

3    decision that was contrary to, or involved unreasonable application of, clearly established

4    federal law, as determined by the Supreme Court of the United States, and/or resulted

5    in a decision that was based on an unreasonable determination of the facts in light of the

6    evidence presented in state court proceedings.

7

VII.

8        By this reference, the accompanying memorandum of points and authorities and

9    exhibits are made part of this petition as if fully set forth herein. Petitioner's claims

10   under this petition will be based on the petition, the accompanying points and authorities,

11   the exhibits attached hereto, all records, documents, and pleadings on file with the San

12   Francisco County Superior Court in People v. Victor Ray Crawford, No. 102016; with

13   the California Court of Appeal, First Appellate District, in People v. Victor Ray

14   Crawford, No. A111460; and with the California Supreme Court in People v. Victor Ray

15   Crawford, No. S149632, and any further material to be developed at any future hearings

16   which may be ordered.

17       WHEREFORE, petitioner respectfully requests that this court:

18            1. Take judicial notice of the court records specified above;

19            2. Order respondent to (a) furnish a complete copy of the Reporter's and

20   Clerk's Transcripts of the state court proceedings; (b) file an answer responsive to the

21   factual allegations of the petition; and (c) show cause why petitioner is not entitled to the

22   relief sought;

23            3. Conduct a hearing at which proof may be offered concerning the

24   allegations in this petition or any affirmative defenses raised by respondent;

25

26

- 4 -

1          4.  After full consideration of the issues raised in this petition, grant the

2   petition, vacate the judgment and sentence imposed upon petitioner in San Francisco

3   County Superior Court Action No. 186848; and

4          5.  Grant petitioner such further relief as is appropriate in the interests of

5   justice.

6   Dated:  May 28, 2008                 Respectfully submitted,

7

8                                   DAVID McNEIL MORSE

9                                 Attorney for Petitioner

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

## **VERIFICATION**

2

I, the undersigned, declare:

3    1. I am an attorney duly licensed to practice law in the State of California.

4  I am the attorney for petitioner herein, who is confined at the Salinas Valley State Prison

5  in Soledad, California.

6    2. I am authorized to file this petition for writ of <u>habeas corpus</u> on

7  petitioner's behalf.

8    3. I make this verification because petitioner is incarcerated in a county

9  different than that of my law office, and because these matters are more within my

10  knowledge than his.

11    4. I have read the foregoing Petition for Writ of <u>Habeas Corpus</u> and believe

12  that the matters stated therein are true. On that basis, I allege that they are true.

13    I declare under penalty of perjury that the foregoing is true and correct.

14    Executed May 28, 2008, at San Francisco, California.

15

16
                                DAVID McNEIL MORSE

17

18

19

20

21

22

23

24

25

26

- 6 -

# MEMORANDUM OF POINTS AND AUTHORITIES
# STATEMENT OF THE CASE

Petitioner Victor Ray Crawford was charged in a six-count information filed in San Francisco County Superior Court. (CT 1-3). Count one alleged that petitioner on March 20, 1980 willfully kidnapped Alex V. to commit robbery, in violation of Penal Code section 209b.[2] Count two alleged that petitioner attempted to rob the same person on the same date in violation of section 664. Count three charged petitioner with a lewd and lascivious act against the same person who was under the age of fourteen, in violation of section 288, subd. (b). Count four charged an act of oral copulation in violation of section 288a, subd. (c), and count five charged an act of sodomy in violation of section 286, subd. (c). Finally, count six alleged that petitioner committed an assault upon the same person by means of force likely to produce great bodily injury in violation of section 245a.

Petitioner was tried by a jury before the Hon. S. Lee Vavuris between January 25 and 28, 1982. On January 28, the jury found petitioner guilty on all counts. (CT 17-22; RT 195-196.)

On February 25, 1982, petitioner was sentenced to a term of life imprisonment on count one, to terms of eight years imprisonment on counts four and five to run consecutively to each other and to the life term imposed on count one, and to concurrent prison terms on the remaining counts, for a total term of life imprisonment plus sixteen years. (CT 23-27; RT 213-215.)

Although a timely notice of appeal was filed (CT 29), petitioner's retained counsel failed to file an opening brief. The appeal was dismissed and the remittitur issued. On

---

[2]All further statutory references are to the California Penal Code unless otherwise indicated.

1    December 7, 2005, the state Court of Appeal granted petitioner's motion to recall the

2    remittitur and reinstated the appeal.

3        On December 19, 2006, the state court affirmed petitioner's conviction.     On

4    February 28, 2007, the California Supreme Court denied his petition for review.

5    **STATEMENT OF TRIAL EVIDENCE CONCERNING THE OFFENSE**

6        On the evening of March 20, 1980, twelve year-old Alex V. went to the Jewish

7    Community Center in San Francisco to play basketball and swim. (RT 14-16.) About

8    9:45 or 10 p.m. he took the bus from the Center to his home at 25th Avenue and

9    California Street. After his friend left the bus, a man whom he identified as petitioner

10    sat next to him. Petitioner asked Alex his name and where he was going but he did not

11    answer. (RT 17-18.)

12        Both Alex and petitioner exited the bus at the same stop which was about 2 ½

13    blocks from Alex's home. As they waited for the light to change, petitioner told Alex

14    he had a little too much to drink and asked if Alex could walk him home. When Alex

15    said he could not, petitioner grabbed him by the left hand and then Alex said he would.

16    Petitioner led him the opposite way from his home. (RT 18-21.)

17        Petitioner grabbed Alex by the neck and said, "If you make a sound, I'll kill you."

18    They walked two-and-a-half or three blocks into the area of Sea Cliff. As they walked,

19    petitioner asked Alex if he had any money. When Alex said no, petitioner told him he

20    did not believe him. (RT 22-25.) When they got to a secluded area, petitioner made

21    Alex take his pants off, removed Alex's underpants and pulled down his own pants. He

22    rubbed his penis against Alex's and then told Alex to suck his penis. (RT 25-27.) When

23    Alex refused, petitioner hit his head against the "floor." Because he could not stand the

24    pain, he agreed. He put petitioner's penis in his mouth and bit it. Petitioner then banged

25    his head against the floor a couple of times. Alex called out "Help"; petitioner turned

26    him over on his stomach and put his penis into Alex's anus. (RT 28-30.)

- 8 -

1    Petitioner dressed and left. A short time later he returned and asked for his hat.

2    He saw it, picked it up and walked away. Alex saw petitioner walk away and then saw

3    two police cars stop him less than a block away, although there was a period of about

4    thirty-five seconds during which petitioner was out of his sight. (RT 31-32, 61, 68.)

5    A policeman came up to Alex; he pointed out petitioner and told him "that man

6    molested me." Alex was taken to the hospital and treated for bruises on his legs and

7    face. (RT 33, 39-40.)

8    Alex testified that, before trial, the prosecutor showed him a photograph of

9    petitioner because he had forgotten the clothes petitioner had worn. (RT 57.) At trial,

10   he identified a tan trench coat and blue coat taken from petitioner as similar to those his

11   assailant had worn. (RT 44.) Alex admitted that he did not have any friends or

12   associates who were black and, when he lived in the Soviet Union up until 2 ½ years

13   before the attack, he did not know any Black people. (RT 14, 65.)

14   Pamela Needham, who lived at 2 Scenic Way in San Francisco, testified at

15   petitioner's trial that about 9:30 or 10:00 p.m. on March 20, 1980 she heard screams for

16   help coming from the back of her house. She also heard a muffled voice say, "Shut up

17   or I'll kill you." She immediately called the police. (RT 108-111.) She saw a figure

18   coming up the side of her driveway and then walk across Scenic Way toward 25th Street.

19   He then turned around and walked back toward her house. She described him as a thin

20   black man whom she identified at trial as petitioner. (RT 112-113.) The man, who had

21   a little hat on, was the same man she saw officers take into custody. (RT 114-115.)

22   San Francisco police officer Michael Farrell, responding to a radio call of someone

23   screaming in a yard, drove by a man wearing a brown coat and tan pants as he drove

24   down 25th Avenue from Lake Street. About five minutes later he saw the same man,

25   whom he identified as petitioner, in about the same spot, and stopped him. (RT 71-75,

26   84-85.)

- 9 -

1          Officer John Bain, also responding to a call, saw someone, who was identified as

2    Alex V., come out of the driveway at 2 Scenic. He appeared to be in the state of shock,

3    pointed at the man who had been stopped by other officers, and said that "the man in the

4    blue hat just raped me." (RT 89-99.) Bain testified that the bus stop at 25th Avenue and

5    California was a transfer point from one bus to another. If a person had committed a

6    crime in that area, there were a lot of places to hide. (RT 102-104.)

7          Alex was driven to the spot where petitioner was detained and identified him. (RT

8    77.) Petitioner told officer Farrell that he lived on 44th Avenue, was on his way home

9    and had not heard any screams. He showed his identification without hesitation. (RT

10   77, 85-86.) After being taken to the station, petitioner waived his Miranda rights and

11   told an officer he was too drunk to remember anything. (RT 130-6 - 130-9.) Tests

12   performed on Alex for the presence of semen did not detect any. (RT 130-12.)

13         Petitioner testified at trial that, on the day in question, he had received two job

14   opportunities and was in an optimistic frame of mind. (RT 130-16, 160.) He took the

15   bus from his home to a movie and, before going into the theater, he bought a half pint

16   of brandy which he sipped as he watched the movie. (RT 130-17 - 130-20.) After

17   leaving the movie, he took the 1 California bus to California and 25th Avenue. He sat

18   down on the bus and did not recall seeing Alex V. on the bus. (RT 130-21 - 130-24.)

19         Petitioner planned to transfer buses at California and 25th Avenue but had to

20   urinate. As the gas station on the corner was closed, he looked for a secluded place.

21   After urinating in the block north of Lake Street, he started walking south but was

22   stopped by four men on the corner of Lake. (RT 131-134.) The men, who were

23   policemen, said that they had received a complaint; they handcuffed him and put him in

24   a car. (RT 133-135.)

25         Petitioner was not drunk that evening and did not remember telling an officer he

26   was too drunk to remember what happened. He told the policemen who confronted him

- 10 -

1   that he was on his way home from a movie and had not done anything. (RT 141-143.)

2   He testified at trial that he had never been to the area next to 2 Scenic Drive, and that he

3   did not sodomize Alex V. or orally copulate him or attack or strike him. (RT 138-139.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

- 11 -

1

## ARGUMENT

2

**THE STATE COURT VIOLATED PETITIONER'S FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FAIR TRIAL BY AFFIRMING HIS CONVICTION FOR KIDNAPPING FOR ROBBERY DESPITE THE FACT THAT THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CHARGE**

3

4

5

### A.    Petitioner's contention in the state court proceeding

6

In his direct appeal, petitioner argued that a conviction that is not supported by

7

sufficient evidence violates both Due Process Clauses of the Fourteenth Amendment to

8

the United States Constitution and article I, section 15 of the California Constitution, and

9

is invalid for that reason.    Jackson v. Virginia, 443 U.S. 307, 313-324 (1979).    In

10

Jackson, on review of a claim of insufficiency, the court held that the reviewing court

11

must review the record "in the light most favorable to the prosecution" and be convinced

12

"that a rational fact finder could readily have found the petitioner guilty beyond a

13

reasonable doubt."    Id. at p. 324, 377.

14

Petitioner contended that the facts of his case did not meet this standard for one

15

or more of the following reasons:  (1) there was insufficient evidence that the movement

16

of Alex V. was for the purpose of robbery; and (2) there was no evidence that petitioner

17

had a specific intent to rob at the time of the kidnapping of Alex V.

18

19

### 1.    The evidence was insufficient to establish that the movement of Alex V. was for the purpose of robbery or attempted robbery

20

The testimony of Alex V. may well have established sufficient evidence of the

21

lesser-included offense of kidnapping in violation of Penal Code section 207.  There was

22

also evidence of a kidnapping for the purpose of rape but no such offense was charged

23

against petitioner.  However, the evidence was insufficient to establish that petitioner

24

kidnapped Alex to commit robbery.

25

The testimony of Alex V. established that petitioner forced him to walk about two-

26

and-a-half blocks from the bus stop along a city street and into a secluded area off a

- 12 -

1    driveway. While they were walking, and before Alex was led off the street and into the

2    secluded area, Alex testified that petitioner asked him if he had any money. The totality

3    of the Alex's testimony, and the totality of the evidence, in support of the issue of

4    robbery or attempted robbery is as follows:

5        A.    [Alex V.]: When we were walking he asked me if I have any money?

6        Q.    [District Attorney]: What did you tell him?

7        A.    "No."

8        Q.    What did he say?

9        A.    He said "I don't believe you?"

10       Q.    I don't believe you?

11       A.    I don't believe you.

12       Q.    Then what happened?

13       A.    Then he didn't do anything about it, and he just lead me.

14       Q.    Did you have any money with you?

15       A.    No.

16       Q.    If you did were you prepared to give it to him?

17       A.    Yes.

18       Q.    Okay. Now, he lead you into this secluded area after asking you about

19             money and indicating he didn't believe you. Did he ask you about money

20             again?

21       A.    No.

22       Q.    What happened when you went into the secluded area?

23       A.    He pulled my pants down.

24    (RT 25.)

25       The bottom line is that petitioner asked if Alex had money, and that was all. He

26    did not demand money or ask for money. He did not display a gun or any weapon. In

- 13 -

1    fact, there is no evidence that petitioner was armed. Although Alex testified that, earlier,

2    petitioner had said he would kill him if he talked, he did not say he would kill him or

3    harm him in any way if he did not give him money. In fact, petitioner did not actually

4    ask for money. And, most significantly, once Alex said he had no money and petitioner

5    said he didn't believe Alex, petitioner "didn't do anything about it." (RT 25.) Petitioner

6    did not search Alex's pockets or clothing or pat him down.

7    Under state law, "An attempt to commit a crime consists of a specific intent to

8    commit the crime, and a direct but ineffectual act done toward its commission." See,

9    e.g., People v. Jones, 75 Cal.App.4th 616, 627 (1999). Petitioner argued that the mere

10   question of whether Alex had any money, even under the circumstances presented here,

11   does not constitute "a direct but ineffectual act done toward" the commission of a

12   robbery.

13                         **2.    There was insufficient evidence that petitioner**
                                   **had a specific intent to rob at the time of the**
14                                 **kidnapping**

15   Under state law, a kidnapping without the intent to rob constitutes kidnapping but

16   not the greater offense of kidnapping for the purpose of robbery. A robbery during a

17   kidnapping where the intent was formed after the asportation is a robbery and not a

18   kidnapping for the purpose of robbery. People v. Tribble, 4 Cal.3d 826, 832 (1971);

19   People v. Lindsay, 227 Cal.App.2d 482, 508-510 (1964).

20   Applying these statements of law to the unusual factual circumstances of the instant

21   case, there is no evidence that, at the time petitioner restrained Alex, he had any intent

22   to rob him. If there had been an intent to commit any crime, it was a crime or crimes

23   of a sexual nature as is evidenced by petitioner's conduct after leading Alex to a secluded

24   area in contrast to the total absence of any follow-up conduct related to robbery after

25   asking Alex if he had any money. In other words, petitioner's entire effort was devoted

26   to the satisfaction of his sexual desires and not to the satisfaction of any monetary desires.

- 14 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**B. The state court's adjudication of petitioner's case was contrary to, or involved unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), a federal habeas court may grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if the state court adjudication resulted in a decision that (1) was contrary to clearly established federal law as determined by the Supreme Court of the United States, or (2) involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States. Id. § 2254(d)(1); see also Lockyer v. Andrade, 538 U.S. 63, 71 (2003).

Here, the state court applied the rule of Jackson v. Virginia, supra, 443 U.S. 307 to the facts of the case in an objectively unreasonable manner. See, e.g., Smith v. Mitchell, 437 F.3d 884, 889-890 (9th Cir.2006), judg. vacated sub nom Patrick v. Smith, ___ U.S. ___ [127 S.Ct. 2126] (2007), judg. reinstated sub nom Smith v. Patrick, 508 F.3d 1256 (9th Cir.2007).

In Smith, supra, the state court affirmed the defendant's conviction for assault on a child resulting in death. She petitioned the district court for habeas relief on the ground that the conviction was unsupported by sufficient evidence. After denial by the district court, the Ninth Circuit reversed, holding that no rational trier of fact could have found beyond a reasonable doubt that defendant had caused the child's death, and further that the state court's affirmance of her conviction constituted an unreasonable application of Jackson. Id., at p. 1261.

The same is true in petitioner's case. There was no evidence from which a rational trier of fact could reasonably conclude beyond a reasonable doubt that petitioner kidnapped Alex V. in order to rob him. The state court's contrary conclusion constituted

- 15 -

1  an unreasonable application of established federal law as determined by the Supreme
2  Court in <u>Jackson</u>.

3      Consequently, petitioner is entitled to relief, and the writ should issue.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

- 16 -

1

**CONCLUSION**

2        For the foregoing reasons, petitioner requests that the court grant the relief

3 requested in his Petition for Writ of <u>Habeas Corpus</u>.

4 Dated: May 28, 2008                              Respectfully submitted,

5

6                                                  _____
                                                   DAVID McNEIL MORSE
7                                                  Attorney for Petitioner

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

- 17 -

## EXHIBIT A

Court of Appeal, First District, Division 2, California.
The PEOPLE, Plaintiff and Respondent,
v.
Victor Ray CRAWFORD, Defendant and Appellant.
No. A111460.
(San Francisco County Super. Ct. No. 102016).
Dec. 19, 2006.

Victor Ray Crawford, Soledad, CA, Pro Per.

Office of the Attorney General, San Francisco, CA, for Plaintiff and Respondent.

First District Appellate Project, John Francis McCabe II, San Francisco, CA, for Defendant and Appellant.

<u>RICHMAN</u>, J.
    *1 In January 1982, a jury found defendant Victor Ray Crawford guilty as charged of kidnapping for the purpose of robbery (<u>Pen.Code, § 209, subd. (b)</u> [FN1]), attempted robbery (§§ 211, 664), committing a lewd and lascivious act upon a child under the age of 14 (§ 288), forcible oral copulation with a child under the age of 14 (§ 288a, subd. (c)), forcible sodomy with a child under the age of 14 (§ 286, subd. (c)), and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)). The trial court sentenced defendant to state prison for a total term of 16 years to life.

<u>FN1.</u> Subsequent statutory references are to the Penal Code.
    Defendant filed a timely notice of appeal. However, he had engaged an attorney whose failure to file an opening brief resulted in dismissal of the appeal in September 1982. This attorney was subsequently suspended from the practice of law by the California Supreme Court, in part for the inaction on defendant's appeal. After new counsel was engaged, and this court was apprised of the circumstances for the dismissal, we recalled our remittitur and reinstated the appeal.

    Defendant's primary contention is that the evidence is insufficient to support the jury's verdict on the kidnapping charge. Our examination of the record shows otherwise, that the verdict is amply supported by the evidence. The remainder of defendant's claims address the formalities with which his sentences were formulated and imposed. We conclude that there were minor errors, but they do not require a remand for resentencing because the errors were either harmless or can be corrected here. Accordingly, we modify the judgment of conviction and, as modified, affirm.

## BACKGROUND

    The victim of all the offenses committed by defendant was Alex V., who was 12 years-old at the time. [FN2] He testified as follows: On the evening of March 20, 1980, he was returning home on a Muni bus with a friend after playing basketball at the Jewish Community Center in San Francisco. When the friend left the bus, defendant sat next to Alex, and tried to engage him in conversation. Alex didn't answer because he was afraid. Alex got off the bus at California Street and 25th Avenue, less than three blocks from his home. Defendant followed.

<u>FN2.</u> Alex and his family were recent emigrants from the then-U.S.S.R. It may therefore be inferred that his command of English was not yet perfect. It should also be remembered that the hand-typed reporter's transcript is almost a quarter century old.

Both of these factors may account for some of the idiosyncratic syntax and punctuation in the testimony quoted in the text

Alex was waiting at the crosswalk when defendant came up and said, "I had a little too much to drink could you walk me home?" After Alex replied that he couldn't, defendant "grabbed me by the hand." "He asked me again to walk with him and I couldn't do anything, there wasn't anyone on the street so I said 'Okay.' [¶] ... [¶] Then he lead me about a block ... [¶] The opposite way which I was going." Alex went with defendant "[b]ecause I didn't have any other choice." After going about a block, still holding Alex by the hand, defendant "grabbed me by the neck and he said 'If you make a sound I'll kill you.' " Alex was scared and unable to break free. Alex testified, "When we were walking he asked me if I had any money." After Alex replied "No," defendant said, "I don't believe you." Defendant "lead me another block until we get to a driveway." Defendant forced Alex into a garage alcove (what Alex called "an opening for the stairs") out of view from the street.

*2 Defendant pulled Alex's pants and underpants off, and then pulled down his own pants. Defendant made Alex lie down on his back. Defendant then lay on top of Alex, and rubbed his penis against Alex's penis. Defendant tried to kiss Alex and then "told me to suck his penis." When Alex refused, defendant began "hitting ... my head very hard against the floor." Alex yelled for help. The beating caused Alex to change his mind: "I couldn't stand the pain any more so I said 'Okay.' " Then defendant "put his penis in my mouth and I bit it." As Alex again yelled for help, defendant resumed slamming his head against the floor. Alex further testified that defendant then "turned me over on my stomach," and put his penis in Alex's anus. Defendant pulled up his pants, and left.

Alex's cries for help were heard by the owner of the house where Alex was being assaulted.[FN3] She called police, and observed defendant walk down her driveway. The owner's call produced an almost immediate police response. Officers found and detained defendant less than a block away. When Alex saw defendant being detained, Alex identified him as his attacker. After defendant was arrested and taken to a police station, he told an investigator that he (defendant) was too drunk to remember anything.

FN3. The owner testified that just after hearing "this shrill screaming for help and then I heard a muffled male voice saying 'Shut up or I'll kill you.' "

Defendant testified on his own behalf. His version of events was that he was on the bus going home after seeing a movie. He drank some brandy he had brought into the theatre. He got off the bus to relieve himself at a gas station, but it was closed. Looking for "an area that was concealed enough for me to do what I had to do quickly," defendant left the area of the bus stop because "[t]here was people waiting...." He urinated at "a secluded spot" on the street, and was walking back to the bus stop when he was arrested. Defendant denied meeting Alex or assaulting him in any manner.

The jury deliberated for less than two hours before finding defendant guilty as charged on all counts.

## DISCUSSION

## I

Penal Code section 209, subdivision (b) makes guilty of kidnapping for robbery "Any person who kidnaps or carries away any individual to commit robbery...." "Kidnapping for robbery, or aggravated kidnapping, requires movement of the victim that is not

merely incidental to the commission of the robbery, and which substantially increases the risk of harm over and above that necessarily present in the crime of robbery itself." ( *People v. Rayford* (1994) 9 Cal.4th 1, 12.)

Defendant claims the evidence is insufficient in three respects to support his kidnapping conviction. First, he argues the evidence does not establish that he moved Alex with the intent of robbing him. Second, he argues the evidence does not establish that he had that intent when he started to move Alex. Third, he argues there is no evidence that his movement of Alex substantially increased the risk of harm.

We analyze these arguments in light of very well-established rules which emphasize our limited function: "In deciding the sufficiency of the evidence, we ask whether ' "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity upon which a determination depends. [Citation.]" ( *People v. Maury* (2003) 30 Cal.4th 342, 403.) We must accept all reasonable inferences or deductions in favor of the verdict that could have been drawn by the jury. (E.g., *People v. Hughes* (2002) 27 Cal.4th 287, 357; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Wader* (1993) 5 Cal.4th 610, 640.) We also bear in mind that "It is the trier of fact, not the appellate court, that must be convinced of a defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ( *People v. Robillard* (1960) 55 Cal.2d 88, 93; accord, *People v.. Rodriguez* (1999) 20 Cal.4th 1, 11.)

*\*3* We address defendant's first and second arguments together. With respect to the former, defendant contends that Alex's testimony may constitute substantial evidence for the lesser included charge of simple kidnapping, or of kidnapping for the purpose of rape, but it does not demonstrate that the kidnapping was for the purpose of robbing Alex. The only evidence relevant to his intent was Alex's testimony that defendant asked him if he had any money, which, defendant contends, is not enough. As defendant views it, that testimony does not amount to an actual demand for money, nor was it accompanied by an actual display, or threatened use, of force. As for his second argument, defendant continues this train of thought by asserting "there is no evidence that, at the time [defendant] restrained [Alex], he had any intent to rob him. If there had been an intent to commit any crime, it was a crime or crimes of a sexual nature as is evidenced by [defendant's] conduct after leading [Alex] to a secluded area in contrast to the total absence of any follow-up conduct related to robbery after asking [Alex] if he had any money. In other words, [defendant's] entire effort was devoted to the satisfaction of his sexual desires and not to the satisfaction of any monetary desires." We do not agree with either of these arguments.

The Attorney General correctly draws our attention to the principle that robbery does not require a completed removal of personal property from the victim: "A defendant may be convicted of kidnapping for robbery even if the robbery is not completed. [Citations.] All that is required is that the defendant have the specific intent to commit a robbery at the time the kidnapping begins. [Citations.]" ( *People v. Davis* (2005) 36 Cal.4th 510, 565-566.) That defendant did not succeed in any larcenous goal is confirmed by the fact that he was charged and convicted only of attempted robbery. But defendant's arguments are based on interpretations and deductions contrary to the jury's verdict.

The evidence is uncontradicted that the first expression of intent from defendant was not sexual, but related to money. The jury could have concluded that defendant's movement of Alex began with this motive; defendant did say he did not believe Alex had no money. The jury could conclude that defendant moved Alex until he could find a place where he could safely verify whether Alex had any money. The jury could also have concluded that once defendant had forced Alex into the garage alcove, the intention to steal was joined with, or superseded by, another intention, the purpose of which was sexual gratification.[FN4] Under the principles governing our review, we must accept that the jury reached this last conclusion. (See, e.g., _People v. Thomas_ (1970) 3 Cal.App.3d 859, 865-866; _People v. Melendrez_ (1938) 25 Cal.App.2d 490, 494-495.)

FN4. It is not uncommon in kidnapping cases that multiple criminal motives are present. (See, e.g., _People v. Daniels_ (1969) 71 Cal.2d 1119, 1136-1137; _People v. Stringham_ (1988) 206 Cal.App.3d 184, 204-205; _People v. Davis_ (1987) 191 Cal.App.3d 1365, 1369.) This court made reference to the concept in _People v.. Burns_ (1984) 158 Cal.App.3d 1178, 1180.

As for defendant's argument about the supposed absence of proof of force, that too ignores the inferences the jury could draw from the evidence. The "force or fear" required by section 211 for robbery are not technical concepts or legal terms of art that are incomprehensible to lay jurors. (_People v. Anderson_ (1966) 64 Cal.2d 633, 640.) "Force" does not require an actual application of violence. (_People v. Wright_ (1996) 52 Cal.App.4th 203, 210-211.) "Fear" need not be an explicit demand or express threat of harm. (_People v. Flynn_ (2000) 77 Cal.App.4th 766, 771; _People v. Davison_ (1995) 32 Cal.App.4th 206, 212, 216.) Indeed, the two concepts merge and overlap: " '[F]orce is not an element of robbery independent of 'fear'; there is an equivalency between the two: ' "[T]he coercive effect of fear induced by threats ... is in itself a form of force, so that either factor may normally be considered as attended by the other." ' [Citation.]" ( _People v. Wright, supra,_ at p. 211.) Force and fear are issues of fact entrusted to the jury. (_People v. Church_ (1897) 116 Cal. 300, 302-303; _People v. Roberts_ (1976) 57 Cal.App.3d 782, 787.)

*4 Alex testified to the vulnerability he felt when defendant approached after they got off the bus. After rebuffing defendant's request to "walk me home," Alex was "grabbed by the hand." Context is important. A 12-year-old boy, walking home alone, at night, is grabbed by an adult man at a place where "there wasn't anyone on the street." Alex did not resist because he was "too scared." Defendant then began leading Alex into the more quiet and secluded neighborhood streets, even farther away from Alex's home. Alex went along because he believed "I didn't have any other choice." After walking about a block, defendant increased his control by grabbing Alex by the neck and threatening "If you make a sound I'll kill you." Alex thus confronted a situation where he was physically overpowered,[FN5] threatened with death, and had no prospect of escape or rescue by others. From this evidence the jury could conclude that defendant's actions and words amounted to force directed at Alex, and produced fear in him. ( _People v. Church, supra,_ 116 Cal. 300, 302-303; _People v. Brock_ (2006) 143 Cal.App.4th 1266, 1275, fn.5; _People v. Wright, supra,_ 52 Cal.App.4th 203, 211.)

FN5. In a questionnaire defendant filled out for the probation officer, defendant stated he was born in 1948, was five feet nine inches tall, and weighed 150 pounds.

Defendant's third and final argument about his kidnapping conviction deals with the movement, or asportation, element required for aggravated kidnapping. A brief historical digression is necessary because of the peculiar chronology of this appeal.

"At the time of the crime here, there existed two distinct standards of asportation for kidnapping, depending on whether the kidnapping was for robbery (aggravated kidnapping) under section 209, subdivision (b) ... or was a simple kidnapping under section 207(a). [¶] Kidnapping for robbery, or aggravated kidnapping, requires

movement of the victim that is not merely incidental to the commission of the robbery, and which substantially increases the risk of harm over and above that necessarily present in the crime of robbery itself. ( *People v. Daniels* (1969) 71 Cal.2d 1119, 1139; [citation].)" ( *People v. Rayford, supra,* 9 Cal.4th 1, 11-12, fns. omitted.) <sup>FN6</sup> "The second prong of the *Daniels* test," which is all that defendant contests, "refers to whether the movement subjects the victim to a substantial increase in risk of harm above and beyond that that inherent in robbery. [Citations.] This includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. [Citations.] The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased. [Citations.]" ( *People v. Rayford, supra,* at pp. 13-14.) Increased risk of harm may also be found if the defendant displays a " 'demonstrated willingness to be violent.' " ( *People v. Aguilar* (2004) 120 Cal .App.4th 1044, 1049, quoting *People v. Jones* (1999) 75 Cal.App.4th 616, 630.)

FN6. The current version of the aggravated kidnapping statute has modified the second part of the *Daniels* test by deleting the requirement that the movement "substantially" increases the risk of harm over and above whatever risk is inherent in robbery. (See *People v. Dominguez* (2006) 39 Cal.4th 1141, 1151-1153; *People v. Martinez* (1999) 20 Cal.4th 225, 232, fn. 4.) The current version of the statute, which also specifies many additional underlying felonies, provides in pertinent part: "(1) Any person who kidnaps or carries away any individual to commit robbery, rape, spousal rape, oral copulation, sodomy ... shall be punished by imprisonment in the state prison for life with possibility of parole .[¶] (2) This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (§ 209, subd. (b).)

**\*5** Defendant argues that "there was no evidence that the movement of the victim substantially increased the risk of harm." According to defendant, "the movement of [Alex] two and one-half blocks along the sidewalk of a public city street did not substantially increase the risk of harm to him" because defendant "did not take [Alex] to a hidden or secluded location"; all he did was "direct[ ] him along a public street." Quite simply, this is rewriting the record. There is ample evidence from which the jury could have concluded that defendant's movement of Alex exposed him to a substantial risk of increased harm.

Alex testified that when he alighted from the bus, there was no one else on the street. But it must be remembered that this was California Street, a wide street along which a Muni bus route ran; not only might another bus appear, but at any moment other vehicles might come on the scene, the occupants in a position to observe what was being done to Alex. Defendant himself testified that "there were people walking in the ... area" and "waiting at the bus stop." So defendant moved Alex more than two blocks, to a quiet residential area that defendant himself described in his testimony as "secluded." Even then, defendant sought the greater privacy afforded by a garage alcove not visible from the street. "[W]here a defendant moves a victim from a public area to a place out of public view, the risk of harm is increased even if the distance is short." ( *People v. Shadden* (2001) 93 Cal.App.4th 164, 169.)

The jury could conclude that what started as a simple intended robbery on a well-lit California Street became an orgy of sexual aggression once the scene shifted to the privacy of a garage alcove off a quiet residential street. (See *People v. Diaz* (2000) 78 Cal.App.4th 243, 249 ["Clearly, the risk to the victim in the dark and isolated location of the attack increased significantly as compared to the lighted sidewalk near the bus stop where the incident began"].) The change in location, because it had greater protection from public scrutiny, provided defendant "the decreased likelihood of detection." ( *People v. Rayford, supra,* 9 Cal.4th 1, 13.) It also gave defendant the "enhanced

opportunity to commit additional crimes" ( *ibid.*), and the jury could conclude that defendant took full advantage of that opportunity. But for the fortuitous fact that Alex's cries for help alerted the homeowner, and the prompt response of police, more crimes might have been committed, and gone undetected. (See *People v. Diaz, supra,* at p. 249.)

There were additional factors from which the jury could also conclude that moving Alex substantially increased his risk. The jury saw pictures of the garage alcove, and may have concluded that the alcove was small enough that it inhibited Alex's ability to escape. (See *People v. Rayford, supra,* 9 Cal.4th 1, 13.) Finally, the jury could conclude that the peril created by the move was shown from defendant's "willingness to be violent." ( *People v. Aguilar, supra,* 120 Cal.App.4th 1044, 1049; *People v. Jones, supra,* 75 Cal.App.4th 616, 630.) Indeed; it was in the alcove, and when his demands were resisted, that defendant repeatedly slammed Alex's head against the garage floor, a quantum leap in the amount and nature of the force theretofore used against Alex.

*\*6* In light of the foregoing, we conclude that substantial evidence supports the jury's kidnapping verdict on all of the points challenged by defendant.

## II

The trial court sentenced defendant as follows: the aggravated term of eight years for the forcible oral copulation; the aggravated term of eight years for the forcible sodomy, to be served consecutively; a life term for the kidnapping, to be served consecutive to the 16 years already imposed; 30 months for the attempted robbery, to be served concurrently; the aggravated term of seven years for the lewd act charge, to be served concurrently; and the aggravated term of four years for the assault, also to be served concurrently.

Defendant's first argument attacking his sentence concerns the consecutive terms for the forcible oral copulation and sodomy counts. He makes two separate points.

The terms were imposed pursuant to the earlier version of section 667.6, subdivision (c), (hereafter Section 667.6(c)) which provided in pertinent part: "In lieu of the term provided in Section 1170.1, a full, separate and consecutive term may be imposed for each violation of ... committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace of threat of great bodily harm whether or not the crimes were committed during a single transaction." (Stats.1979, ch. 944, § 10, p. 3258.)

Defendant's first point is essentially one of law-whether the trial court lacked authority to impose consecutive sentences under Section 667.6(c) because of instructional error.

At the time the offenses were committed (March 1980), the statutes penalizing oral copulation and sodomy tracked the language of Section 667.6(c)-applying to either crime when committed "by force, violence, duress, menace, or threat of great bodily harm" (Stats.1979, ch. 944, §§ 6-7, pp. 3253-3254 [§§ 286, subd. (c), 288a, subd. (c) ] ). However, by the time defendant was sentenced (February 1982), the Legislature had amended the language of those statutes, deleting the "threat of great bodily harm" language and replacing it with "fear of immediate and unlawful bodily injury on the victim or another person" (Stats.1980, ch. 915, §§ 1-2, pp. 2912-2913 [§§ 286, subd. (c), 288a, subd. (c) ] ). However, the Legislature did not change the language of Section 667.6(c) until 1985.

What defendant calls this "discrepancy" was soon causing problems for the Courts of Appeal. Reviewing courts began seeing full consecutive sentences imposed pursuant to Section 667.6(c) which used the "threat of great bodily harm" language-in cases where the jury was not instructed with this language, but with the "fear of immediate and unlawful bodily injury" language when sodomy or oral copulation was charged. Generally, reviewing courts struck consecutive sentences imposed pursuant to Section 667.6(c) because the jury convicted, or could have convicted, according to the lesser standard. As one court put it: "[A] general verdict of guilty ... no longer necessarily implies findings essential to invoke the sentencing mode of [Section 667.6(c) ]. The jury may have predicated guilt on a finding the victim was in fear of immediate and unlawful bodily injury to herself. Fear of bodily injury to oneself is a lesser level of coercion than threat of great bodily harm; and fear of bodily injury to another is an entirely different kind of coercion. [¶] ... [¶] ... Thus the general verdict of guilty ... does not alone provide an adequate basis to invoke [Section 667.6(c) ] absent a further special finding by the jury of ... the means of coercion essential to bring a conviction ... within the sentencing scheme of [Section 667.6(c) ]." ( *People v. Riffey* (1985) 171 Cal.App.3d 419, 423-424; see *People v. Foley* (1985) 170 Cal.App.3d 1039, 1050-1055; *People v. Reyes* (1984) 153 Cal.App.3d 803, 811-813.)

*7 Our court, in contrast, adopted a different approach. In *People v. Ramirez* (1987) 189 Cal.App.3d 603, we concluded that "[t]he error ... although apparently one of sentencing, is really in jury instruction," which could be subjected to harmless error analysis. ( *Id.* at. pp. 633-634 & fn. 58.)

The Legislature responded to these decisions by amending Section 667.6(c) so that it too used the "fear of immediate and unlawful bodily injury on the victim or another person" language; the Legislature acted to "avoid unnecessary loss of justified enhancements." (Stats.1985, ch. 401, §§ 1-2, pp. 1593-1594.) Due to the unusual circumstances attending this appeal, the problem is again before us more than two decades later.

Here, however, the instructions given to the jury used the "threat of great bodily harm" for both the sodomy and the oral copulation charges. Defendant has thus attacked a problem that does not exist.

But, on a more modest scale, defendant does point to a difficulty of a similar nature. The instructions for oral copulation told the jury that conviction required proof that "1. that a person participated with another person in an act of oral copulation, and [¶] 2. that such other person was under eighteen years of age, or that a person compelled the participation of another person in an act of oral copulation by means of force, violence, duress, menace or threat of great bodily harm." Defendant sees error in this instruction, independent of the "great bodily harm" language. Defendant argues: "Thus, the jury could well have convicted ... if they found that Alex ... was under the age of eighteen (which was an undisputed fact) without even reaching the question of whether the act was compelled 'by means of force, violence, duress, menace or threat of great bodily harm.' " At bottom, defendant is arguing the likelihood that the jury convicted defendant solely because of the victim's age, with no regard to the rest of the other evidence. We conclude that there is no reasonable possibility that this is what motivated the jury.

First of all, the jury was not confronting a situation where there were multiple victims, other defendants, or crimes allegedly committed on different dates and at different locations. All of the charges submitted to the jury involved one defendant, one victim, one time, and one place.

Second, given the very confined spatial and chronological features of the crimes, it strains credulity beyond the breaking point to conceive of the jury adopting the compartmentalized decision-making defendant assumes. We have already seen that the kidnapping of Alex was accomplished by actual force and the threat of death ("If you make a sound I'll kill you"). Ordered to orally copulate defendant, Alex refused, and had his head slammed into the alcove floor by defendant. Even then, Alex still resisted; when "defendant put his penis in my mouth ... I bit it," only to have defendant again smash Alex's head against the floor. And it was at about this time that the owner of the property heard defendant again threaten Alex with death ("Shut up or I'll kill you ."). (See fn. 3, *ante.*)

*8 There is no logical basis for concluding that the jury found that defendant sodomized Alex "by force, violence, duress, menace or threat of great bodily harm," but that the same jury used an entirely different approach-one based solely on the victim's age-to find defendant guilty of oral copulation. In other words, it is inconceivable that the jury would accept Alex's testimony for purposes of the sodomy charge (and the kidnapping, assault, and lewd conduct counts), but reject it for purposes of the oral copulation charge. There being no defense argument that the oral copulation was consensual, "force, violence, duress, menace or threat of great bodily harm" becomes the only possible explanation for how the offenses occurred. Accordingly, as we concluded in *People v. Ramirez, supra,* 189 Cal.App.3d 603, 634, fn. 58: "[T]he record establishes as a matter of law that the crime was committed by force or fear of great bodily harm, with no contrary evidence worthy of consideration.... [W]e are confident that, on the facts of this case, the error was harmless beyond a reasonable doubt."

Defendant's second point is not that trial court lacked the power to impose consecutive sentences, only that it did not exercise that power according to the correct procedure.

At the time it pronounced sentence, the trial court stated its reasons as follows:

"I find that there are no mitigating circumstances here. All the circumstances are in aggravation.

"The crime involved great violence and great bodily harm, viciousness and callousness, a violation [ *sic* ] as provided in Rule 421(a)(1).[FN7]

FN7. California Rules of Court, rule 421 was renumbered as rule 4.421, effective January 7, 2001.

"The victim was a young man, twelve years of age I believe he was, twelve or thirteen at the time, particularly vulnerable. That's a violation of Rule 421(a)(3).

"You[r] record, Mr. Crawford, cries to the heavens, other crimes of a similar nature that were charged against you.... [¶] ... I'm looking at the record here and the record speaks for itself.... [¶] ... [¶] ... [T]he Defendant's prior conviction[s] as an adult are of increasing seriousness. That's Rule 421(b)(2).

"The Defendant has engaged in a pattern of violent conduct, which indicates a serious danger to society, which is Rule 421(b)(l).

"The Defendant served a prior prison term, Rule 421(b)(3).

"The Defendant was on probation when he committed the crime, that's pursuant to Rule 421(b)(4).

"The Defendant's prior performance on probation was unsatisfactory. That is <u>Rule 421(b)(5)</u>.

"In other words, what I'm saying for the record here is there are all of these circumstances in aggravation and I find nothing in mitigation. Therefore the Court is going to impose the following sentence.

"I am sentencing you for violation of Section 288(a)(c), that is ... Count IV, oral copulation, I am sentencing you because of the aggravated circumstances to the high term, the term being three, six, or eight years, the Court is sentencing you to eight years on Count IV, the 288(a)(c).

*9 "The Court will also sentence you on Count V, the sodomy count, 286(c), the sentence on that being three, six, and eight years, and again I find no circumstances in mitigation and find all these circumstances in aggravation, therefore, the Court sentences you to the aggravated term of eight years to run consecutive to the eight years on the 288(a)(c). That is Count IV."

When the court had finished pronouncing sentence, the prosecutor inquired "are you therefore designating Count IV as the principal term?" The court replied, "Count IV is the principal term."

Defendant contends that he was "denied his constitutional due process right to a fair sentencing hearing by the trial court's failure to state any reasons for imposing consecutive sentences on Counts 4 and 5." The component of due process which defendant is invoking is framed in his opening brief as the requirement that "a defendant be given an opportunity to assure the accurate presentation of reliable sentencing information to the court."

We feel compelled to observe that much of defendant's argument appears to be misplaced. The due process aspect cited by defendant does not seem to be at issue, given that defendant does not claim-nor does the record show-that he was denied "an opportunity to assure the accurate presentation of reliable sentencing information to the court." In addition, the information used by the trial court came from the probation officer's report, but defendant did not challenge anything in the report at the sentencing hearing. Nor does he assert on this appeal that any of the information conveyed to the court was in fact inaccurate. Finally, because Count IV was made the principal term, it is not correct for defendant to characterize it as a consecutive term. The term on Count IV was not consecutive to any other term. Only Count V, a subordinate term, is properly viewed as a consecutive term. (See § 1170.1, subd. (a).)

The Determinate Sentencing Law requires a sentencing court to "state the reasons for its sentence choice on the record at the time of sentencing." (§ 1170, subd. (c).) Imposing consecutive terms, including consecutive terms pursuant to Section 667.6(c), is a sentencing choice for which a statement of reasons must be given. (Cal. Rules of <u>Court, rules 4.420(a)</u>, <u>4.425(b)</u>; <u>People v. Belmontes</u> (1983) 34 Cal.3d 335, 347.) Selecting the aggravated term for an offense is also a sentencing choice. (§ 1170, subd. (b); Cal. Rules of <u>Court, rules 4.406(b)(4)</u>, <u>4.420(a)-(b) & (e)</u>.) "Only a single aggravating factor is required to impose the upper term [citation], and the same is true of the choice to impose a consecutive sentence [citation]." ( <u>People v. Osband</u> (1996) 13 <u>Cal.4th 622, 728-729.</u>)

It may be that there were technical imperfections with the manner in which the trial court imposed sentence on Counts IV and V. Concerning the principal term, Count IV, the court's brief statement that it was "sentencing ... because of the aggravated circumstances to the high term" does not identify any specific factor in aggravation to

support the sentencing choice. With respect to Count V, the court's citing of "all these circumstances in aggravation" is subject to the same criticism. Nevertheless, defendant accepts them as adequate. But defendant is correct on one point-the trial court made no effort to state a reason for ordering the aggravated term on Count V to be served consecutive to the aggravated term for Count IV.

*10* This was error, but it does not require the resentencing defendant requests. As shown above, the trial court found seven circumstances in aggravation and none in mitigation. In circumstances virtually identical to those here, our Supreme Court concluded that a resentencing was unnecessary: "It is inconceivable that the trial court would impose a different sentence if we were to remand for resentencing. Accordingly, we find the trial court's failure to state reasons for imposing consecutive sentences to be harmless." ( *People v. Champion* (1995) 9 Cal.4th 879, 934.) We reach the same conclusion here.

## III

Defendant's final contention addresses the rest of his sentences. He argues that it was not enough for the trial court to make the sentences on the attempted robbery, lewd act, and assault convictions concurrent to the sentences on the sodomy and oral copulation counts; but that the trial court should have gone one step further and ordered the concurrent sentences stayed by force of section 654. Defendant does not elaborate on his argument beyond invoking the general principle behind section 654, and stressing that the prosecutor at the sentencing hearing advised the court that, apart from the kidnapping, sodomy, and oral copulation counts, the other counts "are ... subject to 654."

The general aim of section 654 is to ensure that the punishment imposed is commensurate with the defendant's culpability. This goal is implemented by focusing on the defendant's criminal objective. If the defendant entertained more than one such objective, he or she is subject to punishment for each of those intents. (See, generally, *People v. Harrison* (1989) 48 Cal.3d 321, 335.) Here, because the trial court could conclude that defendant had at least two criminal objectives-robbery and sexual gratification-he could be punished for each. In addition, he could receive a separate, unstayed, sentence for each of the sexual offenses he committed. The Supreme Court has held that section 654 "does not prohibit the imposition of multiple punishment for separate sexual offenses committed during a continuous attack, 'even where closely connected in time.' " ( *People v. Hicks* (1993) 6 Cal.4th 784, 788, fn. 4, quoting *People v. Harrison, supra,* at p. 336.) Thus, there is no question but that the sentences on the kidnapping, sodomy, oral copulation, and the lewd act counts were proper.

Perhaps surprisingly, the Attorney General steps forward to do the heavy lifting, making a better case for defendant's argument than does defendant. The Attorney General cites the one clear precedent that section 654 prevents a separate sentence for robbery when the defendant is also convicted of kidnapping for robbery: *People v. Gomez* (1992) 2 Cal.App.4th 819, 826-827. The Attorney General also concedes that the assault was "in furtherance of ... the sexual assaults." We agree. Offenses that are "merely incidental to, or were the means of accomplishing or facilitating one objective" cannot receive separate sentences. ( *People v. Harrison, supra,* 48 Cal.3d 321, 335.) The uncontradicted evidence was that defendant slammed Alex's head into the garage floor after Alex resisted defendant's demand that he orally copulate defendant. The only reason Alex allowed defendant's penis into his mouth was because he "couldn't stand the pain any more." Because the evidence shows as a matter of law that the assault was "merely incidental" to the oral copulation, that it was "the means of accomplishing or

facilitating" the oral copulation, we agree with the parties that an unstayed sentence should not have been imposed. ( *Ibid.*) We can correct the problem with a simple modification, obviating any need for a remand to the trial court.

## DISPOSITION

*\*11* The judgment of conviction is modified by staying the sentences imposed on Counts 2 and 6 pursuant to Penal Code section 654. As so modified, the judgment is affirmed. The clerk of the trial court is directed to prepare an amended abstract of judgment reflecting these modifications, and to forward a certified copy to the Department of Corrections and Rehabilitation.

We concur: HAERLE, Acting P.J., and LAMBDEN, J.

1

## **PROOF OF SERVICE BY MAIL**

2

I, the undersigned, declare:

3

I am a resident of the City and County of San Francisco, State of California,

4

over the age of eighteen years, and not a party to the within action. My business address

5

is 595 Market Street, Suite 1350, San Francisco, CA 94105-2825. On May 28, 2008,

6

I served the within PETITION FOR WRIT OF HABEAS CORPUS on the interested

7

parties in this action by placing a true copy thereof enclosed in a sealed envelope with

8

postage thereon fully prepaid, in the United States Post Office mail box, addressed as

9

follows:

10  Attorney General
    455 Golden Gate Avenue, Suite 11000
11  San Francisco, CA 94102-3664

12

I declare under penalty of perjury that the foregoing is true and correct.

13

Executed May 28, 2008 at San Francisco, California.

14

15

David McNeil Morse

16

17

18

19

20

21

22

23
24

25

26

JS 44 (Rev. 12/07)(cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

VICTOR RAY CRAWFORD

E-filing

## DEFENDANTS

MICHAEL S. EVANS, Warden

**(b)** County of Residence of First Listed Plaintiff Montery
(EXCEPT IN U.S. PLAINTIFF CASES)

**PJH**

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

David McNeil Morse
595 Market Street, Suite 1350
San Francisco, CA 94105
415-974-1175

Attorneys (If Known)

Attorney General
State of California
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| | | | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | or Defendant) | Act |
| ☐ 240 Torts to Land | Accommodations | ☒ 530 General | | ☐ 871 IRS—Third Party | ☐ 900Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. section 2254
Brief description of cause:
Petition for Writ of Habeas Corpus

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☐ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE
May 28, 2008

SIGNATURE OF ATTORNEY OF RECORD

```
Court Name: U.S. District Court, NDCA
Division: 3
Receipt Number: 34611019629
Cashier ID: bucklem
Transaction Date: 05/28/2008
Payer Name: david mcneil morse
-------------------------------------
WRIT OF HABEAS CORPUS
 For: victor r crawford
 Case/Party: D-CAN-3-08-CV-002694-001
 Amount:       $5.00
-------------------------------------
CHECK
 Check/Money Order Num: 159
 Amt Tendered: $5.00
-------------------------------------
Total Due:       $5.00
Total Tendered: $5.00
Change Amt:      $0.00

pjh


Checks and drafts are accepted
subject to collections and full
credit will only be given when the
check or draft has been accepted by
the financial institution on which
it  was drawn.
```