United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VICTOR RAY CRAWFORD,

    Petitioner,

    v.

MICHAEL EVANS, Warden,

    Respondent.
_____/

No. C 08-2694 PJH

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Before this court is a petition for writ of habeas corpus filed by state prisoner Victor Ray Crawford ("Crawford"), pursuant to Title 28, section 2254 of the United States Code. Having reviewed the parties' papers, the record, and having carefully considered their arguments and the relevant legal authorities, the court DENIES Crawford's petition.

## BACKGROUND

### I. Procedural History

On January 28, 1982, a jury in San Francisco County Superior Court convicted Crawford of: (1) willful kidnaping to commit robbery (California Penal Code § 209(b)); (2) attempted robbery (Cal. Pen. Code §§ 221, 664); (3) committing a lewd and lascivious act upon a child under the age of fourteen (Cal. Pen. Code § 288); (4) forcible oral copulation with a person under the age of fourteen (Cal. Pen. Code § 288a(c)); (5) forcible sodomy of a person under the age of fourteen (Cal. Pen. Code § 286(c)); and (6) assault by means of force likely to produce great bodily injury (Cal. Pen. Code § 245(a)(1)).

On February 25, 1982, the trial court sentenced Crawford to life imprisonment on count one, eight years imprisonment on counts four and five to run consecutively to each

1 other and to the life term on count one, and to concurrent prison terms on the remaining
2 counts, for a total term of life imprisonment plus sixteen years.

3      Crawford filed a timely notice of appeal with the California Court of Appeal, but his
4 appellate counsel failed to file an opening brief.  In September 1982, the court of appeal
5 dismissed the appeal and issued a remittitur.  The appellate attorney was subsequently
6 suspended from practicing law in California, partly for his inaction in Crawford's appeal.  On
7 December 7, 2005, the court of appeal recalled its remittitur and reinstated Crawford's
8 appeal.  On December 19, 2006, the state appellate court affirmed Crawford's conviction.
9 On February 28, 2007, the California Supreme Court denied his petition for review.
10 Crawford filed the instant federal habeas petition with this court on May 28, 2008.

11 **II.     Factual History**

12      On March 20, 1980, around 9:45 or 10:00 p.m. in San Francisco, the victim, a twelve
13 year-old boy, A.V., was returning home on a public bus with a friend from the Jewish
14 Community Center.  Exh. 2, Reporter's Transcript ("R.T.") 14–17.  After the friend left the
15 bus, Crawford, who was also on the bus, sat down next to A.V.  R.T. 18.  Crawford asked
16 A.V. his name and where he was going.  Id.  A.V. gave his name but did not say where he
17 was going because he was afraid of Crawford.  Id.

18      A.V. exited the bus at California Street and 25th Avenue, about 2 1/2 blocks from his
19 home.  R.T. 19–20.  Crawford exited the bus at the same intersection, supposedly to
20 transfer lines.  R.T. 19–20, 131.  While A.V. was waiting at the crosswalk, Crawford came
21 up and asked A.V. to walk him home because he had a little too much to drink.  R.T. 20.
22 A.V. replied that he would not walk him home.  Id.  Crawford then grabbed A.V. by the right
23 wrist and again asked A.V. to walk him home.  R.T. 20–21.  Feeling scared and without
24 options, A.V. agreed.  R.T. 21–22.  Crawford led A.V. north along 25th Avenue, the
25 opposite direction from A.V.'s home.  R.T. 21.

26      While walking along 25th Avenue, Crawford grabbed A.V. by the neck and said "If
27 you make a sound I'll kill you."  R.T. 22.  With his hand around A.V.'s neck, Crawford led
28 A.V. north along 25th Avenue for another three blocks.  R.T. 23–24.  As they were walking,

1  Crawford asked A.V. if he had any money. R.T. 25. A.V. said he did not, and Crawford
2  stated that he did not believe him. Id.

3      Crawford led A.V. to a secluded alcove off the driveway at 2 Scenic Way in San
4  Francisco, about 3 blocks north of the bus stop. R.T. 24. Crawford removed A.V.'s pants
5  and underwear, and then pulled down his own pants. R.T. 25–26. After Crawford made
6  A.V. lie down, Crawford got on top of him and rubbed his penis against A.V.'s penis. R.T.
7  26–27. He then told A.V. to suck his penis. R.T. 27. When A.V. refused, Crawford started
8  hitting A.V.'s head against the marble floor of the alcove. Id. Because of the pain, A.V.
9  relented. Id. When Crawford put his penis in A.V.'s mouth, A.V. bit it, leading Crawford to
10  resume hitting A.V.'s head against the floor. R.T. 29. Crawford then turned A.V. over onto
11  his stomach and inserted his penis into A.V.'s anus. R.T. 30. A.V. yelled for help several
12  times during the course of the assault. R.T. 29.

13      Crawford got dressed and left. R.T. 30–31. A.V. then put his own clothes back on.
14  R.T. 32. Shortly thereafter, Crawford returned to retrieve his hat which he had left near the
15  secluded alcove. Id. After picking up his hat, Crawford left the driveway and walked up the
16  street. Id.

17      The owner of 2 Scenic Way, Pamela Needham ("Needham"), heard A.V.'s cries for
18  help and called the police. R.T. 111. Needham also observed Crawford leave her
19  driveway and then return shortly thereafter, before leaving again with his hat on. R.T. 112–
20  115.

21      The police responded almost immediately to Needham's call. R.T. 74, 98, 115. One
22  officer spotted Crawford walking less than a block from the house without a hat on. R.T.
23  75. A few minutes later, the same officer saw Crawford, this time with a hat on, still within a
24  block of 2 Scenic Way. Id. The officer detained Crawford. Id. Another officer found A.V.
25  at the end of the driveway of 2 Scenic Way in an apparent state of shock. R.T. 99. A.V.
26  identified Crawford and stated "the man in the blue hat just raped me." R.T. 100. Crawford
27  was arrested. R.T. 77. At the police station, Crawford told an officer that he was too drunk
28  to remember anything. R.T. 130-9.

At trial, Crawford testified on his own behalf. He stated that he got on the bus in question after drinking at a movie, but did not recall seeing A.V. or his friend on the bus. R.T. 130-21–130-24. He got off at 25th Avenue and California Street in order to transfer lines, but he also had to urinate. R.T. 131. Noting that a nearby gas station was closed, he walked north on 25th Avenue to find a secluded place to urinate. R.T. 132. After relieving himself, Crawford walked south towards California Street when he was stopped by four police officers, who detained and arrested him. R.T. 133. Crawford denied going to the secluded driveway alcove on 2 Scenic Way, and claimed that he did not meet or assault A.V. in any way. R.T. 138–139.

## STANDARD OF REVIEW

The petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), so the provisions of that act apply. See Lindh v. Murphy, 521 U.S. 320, 327 (1997). Under AEDPA, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2007).

A state court decision is "contrary to" Supreme Court authority, falling within the first clause of section 2254(d)(1) of Title 28 of the United States Code, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-413 (2000). "Clearly established Federal law" under section 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003). This "clearly established" law refers to the

4

holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state court decision. Id. at 71.

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. See Lockyer, 538 U.S. at 75. However, this standard requires the state court decision to be more than incorrect or erroneous. Id. For the federal court to grant habeas relief, the state court's application of the Supreme Court authority must be objectively unreasonable. Id. The "objectively unreasonable" standard is different from the "clear error" standard in that "the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id.; see Clark v. Murphy, 331 F.3d 1062, 1068 (9th Cir. 2003). Therefore, it is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous. Rather the federal habeas court must conclude that the state court's application of federal law was objectively unreasonable. See Lockyer, 538 U.S. at 76; Clark, 331 F.3d at 1068.

However, when the state court decision does not articulate the rationale for its determination or does not analyze the claim under federal constitutional law, a review of that court's application of clearly established federal law is not possible. See Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000); see also 2 J. Liebman & R. Hertz, Federal Habeas Corpus Practice and Procedure § 32.2, at 1424–1426 & nn. 7–10 (4th ed. 2001). When confronted with such a decision, a federal court must conduct an independent review of the record and the relevant federal law to determine whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. See Delgado, 223 F.3d at 982. As the Ninth Circuit further explained:

> When a state court does not furnish a basis for its reasoning, [federal courts] have no basis other than the record for knowing whether the state court correctly identified the governing legal principle or was extending the principle into a new context. . . . [A]lthough [federal courts] cannot undertake [their] review by analyzing the basis for the state court's decision, [they] can view it through the 'objectively

reasonable' lens ground by Williams. . . . Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law. . . . Only by that examination may [federal courts] determine whether the state court's decision was objectively reasonable.

Id.

As for state court findings of fact, under section 2254(d)(2), a federal court may not grant a habeas petition by a state prisoner unless the adjudication of a claim on the merits by a state court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). The "clearly erroneous" standard of unreasonableness that applies in determining the "unreasonable application" of federal law under section 2254(d)(1) also applies in determining the "unreasonable determination of facts in light of the evidence" under section 2254(d)(2). See Torres v. Prunty, 223 F.3d 1103, 1107–1108 (9th Cir. 2000). To grant relief under section 2254(d)(2), a federal court must be "left with a firm conviction that the determination made by the state court was wrong and that the one [petitioner] urges was correct." Id. at 1108.

**ISSUES**

Crawford argues that, because there was insufficient evidence to support his sentence for kidnaping for the purpose of robbery, his conviction violates his due process rights under the Fourteenth Amendment. More specifically, Crawford argues:

(1) There was insufficient evidence that his movement of A.V. was for the purpose of robbery; and

(2) there was no evidence that he had a specific intent to rob at the time of the kidnaping of A.V.

**DISCUSSION**

**1. Legal Standard**

In Jackson v. Virginia, the Supreme Court established the Due Process standard by which federal courts review a habeas corpus petition challenging the sufficiency of evidence for a state conviction. 443 U.S. 307, 321 (1979). Due Process requires that "no

6

person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Id. at 316 (explaining In re Winship, 397 U.S. 358, 364 (1970)).  A state prisoner who alleges the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim, see Jackson, 443 U.S. at 321, which, if proven, entitles him to federal habeas relief.  See id. at 324.

A federal court reviewing a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. See Payne v. Borg, 982 F.3d 335, 338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319).  A court must apply the Jackson standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004)).

Under the Jackson standard, a conviction may be supported by logical inferences from circumstantial evidence, but the inferences cannot be merely speculative. Sarausad v. Porter, 479 F.3d 671, 677 (9th Cir. 2007), rev'd on other grounds sub nom Waddington v. Sarausad, 129 S.Ct. 823, 827 (2009); Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).  Where behavior is consistent with both guilt and innocence, the burden is on the state to produce evidence that would allow a rational trier of fact to conclude beyond a reasonable doubt that the behavior was consistent with guilt; however, the "prosecution need not affirmatively rule out every hypothesis except that of guilt." Sarausad, 479 F.3d at 678 (quoting Wright v. West, 505 U.S. 277, 296 (1992)).

After AEDPA, a federal habeas court applies the standards of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  The Ninth Circuit has held that section 2254(d)(1) of AEDPA applies to federal review of a state court's sufficiency-of-the-evidence determination under Jackson. Id. at 1274–75.  If the

7

state court affirms a conviction under Jackson, the federal court must decide whether the state court's application of Jackson was objectively unreasonable. See Sarausad, 479 F.3d at 677–78. The Ninth Circuit recently adopted guidelines for determining whether a state court applied Jackson in an objectively unreasonable manner under section 2254(d)(1), which clarify that:

> (1) The focus of the inquiry is on the state court decision;
>
> (2) Even with the deference due by statute to the state court's determinations, the federal habeas court must look to the "totality of the evidence" in evaluating the state court's decision;
>
> (3) The failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable;
>
> (4) The failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable; and
>
> (5) The absence of cases of conviction precisely parallel on their facts does not, by itself, establish objective unreasonableness.

Id. at 678 (citing Hurtado v. Tucker, 245 F.3d 7, 18 (1st Cir. 2001)).

In contrast, section 2254(d)(2) does not apply to Jackson cases because the federal court does not decide whether the state court unreasonably determined disputed facts. Sarausad, 479 F.3d at 678. Rather, the court must decide whether the state court unreasonably applied the Jackson test. Id. at 683. Accordingly, a federal court evaluates a challenge to a state conviction on insufficient evidence grounds under section 2254(d)(1) rather than (d)(2). See id. at 678.

**2. There was Sufficient Evidence from Which a Rational Trier of Fact Could Reasonably Find Beyond a Reasonable Doubt that Crawford Kidnaped A.V. for the Purpose of Robbery**

As noted, Crawford challenges the state appellate court's decision affirming his conviction on two grounds. First, he argues that there was insufficient evidence that the movement of A.V. was for the purpose of robbery. Second, he argues that there was insufficient evidence that he had the specific intent to rob at the time of kidnaping. Because

these claims concern the same evidence, the court, like the California Court of Appeal, addresses these two issues together.

California Penal Code section 209(b) punishes "any person who kidnaps or carries away any individual to commit robbery" with life imprisonment. Cal. Pen. Code § 209(b) (2008). Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Pen. Code § 211 (2008). A person can be convicted of kidnaping for the purpose of robbery whether the robbery was completed or merely attempted. See, e.g. People v. Davis, 36 Cal. 4th 510, 565–66 (2005). In order to be convicted of an attempted crime, there must be "a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." People v. Jones, 75 Cal. App. 4th 616, 627 (1999). A defendant must have the specific intent to commit a robbery at the time the kidnaping begins; if the intent is formed after the victim is moved, the defendant can be convicted of robbery and kidnaping, but not kidnaping for the purpose of robbery. See People v. Tribble, 4 Cal. 3d 826, 832 (1971).

Relying primarily on the trial testimony, Crawford first argues that, while there might have been evidence to support a conviction for simple kidnaping or kidnaping for the purpose of rape, there was no evidence that he possessed an intent to commit robbery. Crawford argues that the sole evidence in support of the charge of kidnaping to commit robbery included the following testimony from A.V.:[1]

```
A:   [A.V.] When we were walking he asked me if I have any money?
Q:   [District Attorney] What did you tell him?
A:   "No."
Q:   What did he say?
A:   He said "I don't believe you."
Q:   I don't believe you?
A:   I don't believe you.
Q:   Then what happened?
A:   Then he didn't do anything about it, and he just lead me.
Q:   Did you have any money with you?
```

---

[1] As noted by the California Court of Appeal, A.V. was a recent immigrant from the then-U.S.S.R., and English was not his first language, thus explaining any awkwardness in the language quoted above.

9

```
A:   No.
Q:   If you did were you prepared to give it to him?
A:   Yes.
Q:   Okay. Now, he led you into this secluded area after asking you about money
     and indicating he didn't believe you. Did he ask you about money again?
A:   No.
```

R.T. 25. Crawford argues that this testimony does not constitute "a direct but ineffectual act done toward" the commission of a robbery because, while Crawford asked if A.V. had money, he did not demand the money or search A.V. Crawford claims that he only asked a question about money, but did not do anything further to follow through.

Crawford also argues that there was no evidence that, at the time of the kidnaping, he possessed an intent to rob A.V. Crawford instead asserts that the evidence shows that his efforts were directed at satisfaction of his sexual desires, as reflected in the absence of follow-up conduct related to robbery.

The California Court of Appeal rejected both of Crawford's contentions. The court applied the Jackson standard to determine whether, accepting all reasonable inferences in favor of the verdict, any rational trier of fact could have found Crawford guilty beyond a reasonable doubt.[2] Exh. 6, Opinion of California Court of Appeal, at 2. In rejecting Crawford's Jackson claims, the court held:

> The evidence is uncontradicted that the first expression of intent from defendant was not sexual, but related to money. The jury could have concluded that the defendant's movement of A.V. began with this motive; defendant did say he did not believe A.V. had no money. The jury could conclude that defendant moved A.V. until he could find a place where he could safely verify whether A.V. had any money. The jury could also have concluded that once defendant had forced A.V. into the garage alcove, the intention to steal was joined with, or superseded by, another intention, the purpose of which was sexual gratification.[1] Under the principles governing our review, we must accept that the jury reached this last conclusion. (See, e.g., People v. Thomas (1970) 3 Cal. App.3d 859, 865–866; People v. Melendez (1938) 25 Cal. App. 2d 490, 494–495.)

Id. at 3 (footnote omitted).[3]

---

[2] The court cited a California Supreme Court opinion which directly quotes the sufficient evidence standard of Jackson. See People v. Maury, 30 Cal. 4th 342, 403 (2003).

[3] In a footnote on the same page, the court of appeal noted:

It is not uncommon in kidnapping [sic] cases that multiple criminal motives are

10

1 This court concludes that the California Court of Appeal reasonably applied the
2 Jackson standard. The state court correctly identified the standards governing the review.
3 It thoroughly considered both of Crawford's arguments concerning kidnaping for the
4 purpose of robbery. The court also noted that a kidnaping can have multiple motives. After
5 reviewing the facts, the court gave deference to the jury's verdict and listed a number of
6 plausible inferences that the jury could have made based on the evidence to reasonably
7 conclude that Crawford possessed the specific intent to commit robbery at the time of
8 kidnaping.

9 Contrary to Crawford's assertions, the evidence presented at trial was sufficient to
10 permit a rational trier of fact to find that Crawford both moved A.V. for the purpose of
11 robbery *and* possessed the specific intent to rob at the time of the kidnaping. As noted by
12 the appellate court, Crawford asked A.V. for money shortly after taking him away from the
13 bus stop, but before committing the sexual assault. Such evidence could reasonably
14 enable a jury to conclude that Crawford intended the robbery from the beginning, rather
15 than deciding to rob A.V. after commencing the kidnaping. Under the very deferential
16 standard which guides this court's review, Crawford has not persuaded the court that no
17 reasonable trier of fact could have concluded that he intended to rob A.V. and that he
18 possessed this intent to rob when the kidnaping commenced. See Juan H., 408 F.3d at
19 1274.

20 The court also notes that, under California law, a robbery can be committed by
21 means of fear as well as force. Cal. Pen. Code § 211. Crawford asked for money from a
22 young boy who he had forcefully led down a street at night after threatening to kill him.
23 While Crawford did not pat A.V. down or use force, neither of those is necessary for a jury
24 to conclude that Crawford had the specific intent to rob A.V.; rather, a robbery can be

26,27   present. (See, e.g., People v. Daniels (1969) 71 Cal.2d 1119, 1136–1137; People v. Stringham (1988) 206 Cal.App.3d 184, 204–205; People v. Davis (1987) 191 Cal.App.3d 1365, 1369.) This court made reference to the concept in People v. Burns (1984) 158 Cal.App.3d 1178, 1180.

28 Exh. 6 at 3.

11

committed solely by means of fear. See People v. Nguyen, 24 Cal. 4th 756, 761 (2000). In sum, there was ample evidence by which a jury could find that Crawford attempted a robbery by means of fear.

Finally, Crawford directly compares his case to Smith v. Mitchell, a recent Ninth Circuit case in which the district court denied the petition for a writ of habeas corpus based on insufficiency of the evidence. Smith v. Mitchell, 437 F.3d 884, 890 (9th Cir. 2006), vacated sub nom Patrick v. Smith, 550 U.S. 915 (2007), reinstated sub nom Smith v. Patrick, 508 F.3d 1256 (9th Cir. 2007). In Smith, a jury found a grandmother guilty of assault on her grandson resulting in death. Id. at 888. The prosecution's expert witnesses testified that the child had died of Shaken Baby Syndrome, even though the victim did not exhibit many of the most common signs of a shaking death. Id. at 887–88. The experts concluded that the cause of death was shearing of the brain stem caused by shaking, even though the autopsy did not reveal any tearing or shearing of the brain stem. Id.

On review, the Ninth Circuit reversed the district court's decision denying the Smith petitioner's habeas petition. It observed that there was no physical evidence of shaking as the cause of death and, as a result, "there simply was no evidence to permit an expert conclusion one way or the other." Smith, 437 F.3d at 890. The court found that the only support for a conviction was speculation by the expert witnesses. Id. Finding that the state appellate court's decision constituted an unreasonable application of the Jackson standard, the Ninth Circuit granted habeas relief. Id.

In contrast to Smith, there was sufficient evidence in this case from which a rational trier of fact could conclude that Crawford intended to rob A.V. A conviction may be supported by logical inferences from circumstantial evidence, but the inferences cannot be merely speculative. See, e.g. Sarausad, 479 F.3d at 678. The inferences in this case were not speculative. Here, the jury could have logically inferred that Crawford intended to rob A.V. based on his physical and verbal threats, coupled with his inquiry into whether A.V. had any money. Crawford's conviction, therefore, was based on Crawford's own actions, as opposed to the expert conjecture that existed in Smith.

**CONCLUSION**

Applying California law, the state appellate court correctly applied the Jackson standard in holding that there was sufficient evidence to support a finding that Crawford had committed a kidnaping for the purpose of robbery. Crawford is unable to show that, under 28 U.S.C. § 2254(d)(1), the state court unreasonably applied clearly established federal law. Because there was sufficient evidence from which a rational trier of fact could find that Crawford both moved A.V. for the purpose of robbery and possessed the specific intent to rob at the time of the kidnaping, Crawford's due process rights under the Fourteenth Amendment have not been violated. Therefore, this court DENIES Crawford's petition for writ of habeas corpus.

This order fully adjudicates this case and terminates all pending motions. The clerk shall close the file.

Dated: July 14, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge